## MERCHANTS' NAT. TRUST & SAVINGS BANK OF LOS ANGELES v. WELCH, Collector of Internal Revenue.

### No. 5556–J.

District Court, S. D. California, Central Division.

July 24, 1934.

Claude I. Parker and Ralph Kohlmeier, both of Los Angeles, Cal., for plaintiff.

Samuel W. McNabb, U. S. Atty., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, both of Los Angeles, Cal., for defendant.

JAMES, District Judge.

This is a suit to recover for overpayment of federal income tax collected for the calendar year 1926. By reason of admissions made in the answer of the defendant and the stipulation of facts filed by the parties, the sole question to be determined is as to the validity and effect of a certain settlement and adjustment agreement alleged to have been entered into by the plaintiff and approved by the Commissioner of Internal Revenue pursuant to the provisions of section 606 of the Revenue Act of 1928 (26 USCA § 2606 and note). This agreement is of date January 29, 1929, and appears to have been signed on the part of the taxpayer by A. W. Morton as vice president. The defendant admits that the amount of $26,491.43 was overpaid and that plaintiff is entitled to recover the same unless the agreement above mentioned foreclosed that right. The contention on the defendant's behalf is that the agreement was regularly entered into with full power on the part of the person executing the same for the plaintiff, and hence is, under the statute, a conclusive determination of the correctness of the amount of the tax.

The Merchants' National Trust & Savings Bank had prior to October 8, 1926, existed as Merchants' National Bank. On the date mentioned it consolidated with Hellman Commercial Trust & Savings Bank, and thereafter conducted business under the name indicated in the title of this suit. The Merchants' National Bank was treated for taxation purposes as continuing its existence after consolidation; its identity was preserved under the new name, for it had in fact merely absorbed the Hellman Commercial Trust & Savings Bank. On December 8, 1928, the Merchants' National Trust & Savings Bank sold and transferred its business and banking assets to Bank of America and ended its existence. It continued no longer as an operating banking institution. For the purpose of liquidating its remaining assets, a meeting of the shareholders was held on December 24, 1928, at which meeting three liquidators were appointed to complete the liquidation of assets under the supervision of the board of directors. A copy of the resolution was forwarded to the Comptroller of the Currency, and that official through his agents apparently took some part in supervising the liquidation also. It was after the liquidators had been appointed, and on December 31, 1928, that the revenue agent presented to A. W. Morton, who had formerly acted as a vice president of plaintiff bank, the agreement hereinbefore referred to and which purported to settle and determine income tax matters as affecting the plaintiff, and then open. The liquidators had no notice or information until long after that date that Morton had assumed to make a binding agreement affecting the right of the plaintiff bank to have an adjustment of its income tax account. Evidence was introduced at the trial of this case which showed that Morton was never a director of the plaintiff bank and that he was given no specific direction from any one to sign the settlement agreement. During the time that Morton was vice president of the Merchants' National Trust & Savings Bank his duties were not in the administrative department, but in the business extension department. Morton himself when called as a witness identified his signature on the agreement, but stated he did not recall having signed it. It appears quite clearly by affirmative evidence that after the plaintiff bank consolidated with the Bank of America the functions of its theretofore general officers ceased. The liquidators had full charge of closing all matters of debts and claims, and

they acted under no superior authority except that of the board of directors. This board consisted of those members who had been elected in January, 1926. Assuming that the affirmative of the issue as to whether the settlement agreement was authorized rested with the plaintiff, it is my opinion that plaintiff has fully sustained the burden of proof in that regard, and that it must be held that the signature of Morton as vice president gave no validity to the purported settlement agreement. It becomes unnecessary, therefore, to discuss the further question raised by the plaintiff, which is that the alleged agreement in form is insufficient because it does not relate to the liability of the taxpayer for any taxable period.

Under the conclusions reached, it follows: That the motion of the plaintiff for judgment must be and it is granted, and the motion of the defendant for judgment and special findings must be and it is denied. An exception is noted; provided however, that if more particular findings are desired, counsel may present them for approval of the court.